**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GREGORY JACKSON,

                                        Petitioner,

                - v -                                        Civ. No. 9:07-CV-293
                                                                    (TJM/RFT)

RICHARD POTTER, *Acting Superintendent*,

                                        Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

GREGORY JACKSON
Petitioner, *Pro Se*
01-A-4820
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ANDREW M. CUOMO                          THOMAS B. LITSKY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Petitioner Gregory Jackson brings this Petition for a Writ of *Habeas Corpus*, pursuant

to 28 U.S.C. § 2254, on the following grounds: (1) the evidence presented at trial was legally

insufficient to convict and was against the weight of the evidence; (2) his sentence was unduly harsh

and excessive in violation of the Eighth Amendment; and (3) he received ineffective assistance of

counsel in violation of the Sixth Amendment.  Dkt. No. 1, Pet.  For the reasons that follow, it is

recommended that the Petition be **denied**.

## I. BACKGROUND

On August 8, 2001, Petitioner was convicted by a jury in New York State Supreme Court, Albany County, of Burglary in the Second Degree (N.Y. PENAL LAW § 140.25(2)) and Grand Larceny in the Fourth Degree (N.Y. PENAL LAW § 155.30(1)).  Dkt. No. 8, State Court R. (hereinafter "R."), Trial Tr. dated Aug. 6-8, 2001, at p. 221.

At trial, Bernadette Tremblay testified that on the evening of October 30, 2000, she returned from work to her home at 271 Sandcreek Road in Colonie, New York, and noticed that the kitchen door at the back of her house was slightly ajar, the molding surrounding her door was broken, and her home was in disarray. Trial Tr. at p. 55.  Tremblay went to her neighbor's house and called the police, who arrived at her house shortly thereafter. *Id.* at p. 56.  Surveying her house with the police, Tremblay noticed that several valuable items were missing from her and her husband's jewelry boxes located in their bedroom, including a gold charm bracelet, a couple pairs of gold earrings with diamonds in them, four gold watches, aqua marine earrings, a silver ring, and a gold chain. *Id.* at p. 63.  She filed an insurance claim for between $2,500 and $3,500 for the missing items. *Id.* at p. 67.  Finally, Tremblay testified that she did not know Petitioner and at no point had given him permission to be inside her home. *Id.*  On cross-examination, Petitioner's counsel, Michael Jurena, Esq., focused on the fact that the Tremblays never had the missing items appraised prior to the robbery and therefore there was no way to determine their exact value. *Id.* at pp. 75-77.

Next, Investigator Richard DiGiulio of the Town of Colonie Police Department Forensic Unit testified that on the evening of October 30, 2000, he dusted for "latent fingerprints," that is, fingerprints invisible to the eye but left by touch through perspiration on the pores of fingers, in Tremblay's home. *Id.* at p. 83.  One of the items DiGiulio dusted was a gray metal cash box from

Tremblay's bedroom, on which he found three prints. *Id.* at pp. 84-85. DiGiulio lifted the prints from the box and sent them to the New York State Department of Criminal Justice Services ("NYSDCJS") for analysis to see if there was a match in their system. *Id.* at pp. 88-90. On cross-examination, Petitioner's counsel questioned DiGiulio's efforts to "preserve" the crime scene and brought attention to the fact that no fingerprints were retrieved from any of the doorknobs that were tested. *Id.* at pp. 97-98. Mr. Jurena also questioned DiGiulio about his role in two other burglary investigations that occurred on the same day and in the same neighborhood in Colonie, New York. *Id.* at p. 103.

Edward Pelton testified that as a Latent Fingerprint Examiner with NYSDCJS, he had twenty-nine (29) years of experience in classifying fingerprints and had taken a latent fingerprints course provided by the FBI. Trial Tr. at pp. 108-09. On November 1, 2000, Pelton received several latent prints submitted by DiGiulio which were then run through the Automatic Fingerprint Identification System ("AFIS"), which compares latent fingerprint samples with a database of other inked fingerprints in order to identify a group of potential matches. The fingerprint characteristics of the potential matches are then compared with the latent fingerprint in order to identify any actual match. After an assistant completed this process and identified a potential match, Pelton concluded that there was an actual match between a latent fingerprint DiGiulio submitted and the fingerprint of Gregory Jackson, the Petitioner. *Id.* at pp. 112-115.

Pelton testified that in comparing fingerprints, he is normally satisfied that there is a match if examination reveals seven to nine "identification points" that reflect the number of identical characteristics such as ridge bifurcations, short ridges, islands, outlets, and dots, between two fingerprints. *Id.* at pp. 111 & 116-17. Pelton determined that there were twenty (20) points of

*-3-*

identification between Petitioner's fingerprint and the latent print submitted by DiGiulio.  *Id.* at p. 117.

On cross-examination, Pelton stated that the latent fingerprint that matched Petitioner's was not a full fingerprint.  *Id.* at pp. 124-25.  Furthermore, Pelton admitted that of the three latent fingerprint impressions that DiGiulio sent to NYSDCJS, he was only able to identify one of them, and that no thumb prints were sent to him.  *Id.* at p. 124.

The final witness for the people, Investigator Michael Ruede, testified that he arrested Petitioner on November 30, 2000.  *Id.* at p. 126.  On cross-examination, Ruede stated that he participated in the investigation of three burglaries on the night of October 30, 2000, all in the same Colonie neighborhood, one on Drake Court and two on Sandcreek Road.  Also, Ruede agreed that the suspect at that time was described as a "white male about 5 foot ten, stocky build, full face wearing a three-quarter length cranberry and Marine jacket."  *Id.* at pp. 129-30.

Petitioner's sole witness was Patricia Pleat, Tremblay's neighbor, who testified that on October 30, 2000, at around four o'clock in the afternoon, she saw a young, stocky, white man in a dark red-hooded sweatshirt go into the driveway of another neighbor's home at 258 Sandcreek Road and then approach the front door of that house.  *Id.* at pp. 138-41.  Finally, Pleat testified that the man she saw approach the home of her neighbor bore no resemblance whatsoever to Petitioner.  *Id.*

After closings, the jury returned a guilty verdict on both Burglary in the Second Degree and Grand Larceny in the Fourth Degree.  *Id.* at p. 221.  Thereafter, the trial court sentenced Petitioner, as a persistent violent felony offender, to concurrent prison terms of twenty-five (25) years to life on the burglary conviction and two to four (2-4) years on the grand larceny conviction.  R.,

Sentencing Hr'g Tr., dated Oct. 18, 2001, at p. 16.  The trial court further ordered that those sentences were to run consecutively to any other sentence imposed for convictions in unrelated proceedings.  *Id.*

On May 21, 2002, Petitioner filed a motion to vacate the conviction pursuant to N.Y. CRIM. PROC. L. ("CPL") § 440.10, which the trial court denied.  R., Exs. C, Pet'r § 440 Mot. & B, Order dated June 26, 2002.  Thereafter, Petitioner was granted leave to appeal the trial court's denial of his § 440 motion.  *Id.*, Ex. B, Order dated Sept. 10, 2002.  Petitioner also filed a separate direct appeal.  *Id.*, Ex. D, Appellate Div. Br. dated June 2003.[1]  The Appellate Division, Third Department, heard and denied both appeals together.  R., Ex. H, Decision dated Jan. 26, 2006; *People v. Jackson*, 808 N.Y.S. 2d 822 (N.Y. App. Div. 3rd Dep't 2006).  Petitioner's application for leave to appeal to the Court of Appeals was denied.  *People v. Jackson*, 6 N.Y.S. 2d 755 (N.Y. Ct. App. 2006).

Petitioner filed the instant *Habeas* Petition on March 14, 2007.  Dkt. No. 1.  Respondent affirms that the Petition was timely filed and that all of Petitioner's claims have been properly exhausted.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)  ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] The exact date Petitioner's direct appeal was filed is not made apparent in the record.

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003).  The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B.  Sufficiency and Weight of the Evidence

Petitioner challenges his conviction asserting that the verdict was unsupported by sufficient evidence and was against the weight of the evidence presented.  With respect to the latter claim,

*-6-*

weight of the evidence review is a product of New York state statute and is therefore merely a state law issue. *See* N.Y. CRIM. PROC. LAW § 470.15; *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004); *see also People v. Bleakley*, 508 N.E.2d 672 (N.Y. Ct. App. 1987). It is well-established that *habeas corpus* review is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). As such, no cognizable federal issue is presented by a *habeas* claim challenging the weight of the evidence adduced at trial. *Cardena v. Giambruno*, 2004 WL 239722, at *4; *Glisson v. Mantello*, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Thus, Petitioner is not entitled to federal *habeas* relief based upon his challenge to the weight of the evidence offered against him at trial. *See Camacho v. McKinney*, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("[P]etitioner's first ground . . . arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding."); *Brown v. Fischer*, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) ("It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.") (citations omitted).

Petitioner's sufficiency of the evidence claim implicates his due process rights and is therefore properly reviewed by this Court. A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes for which he is charged. *See Fiore v. White,* 531 U.S. 225, 228-29

(2001); *Jackson v. Virginia,* 443 U.S. 307, 315 (1979).  This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993) (emphasis in original). A *habeas* petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 324; *see also Schlup v. Delo,* 513 U.S. 298, 323 n.38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson v. Virginia,* 443 U.S. at 319.[2]  "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999)).

Petitioner was convicted of Burglary in the Second Degree and Grand Larceny in the Fourth Degree.  A person is guilty of Burglary in the Second Degree under New York law when he "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" and the "building is a dwelling."  N.Y. PENAL LAW § 140.25(2).  A person is guilty of Grand Larceny in the Fourth Degree under New York law when he "steals property" and the "value of the property exceeds one thousand dollars."  N.Y. PENAL LAW § 155.30(1).

The Appellate Division found the evidence presented at trial sufficient to convict, holding that

---

[2] The *Jackson* standard is clearly established federal law as determined by the Supreme Court.  *See Huber v. Schriver,* 140 F. Supp. 2d 265, 276 n.5 (E.D.N.Y. 2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 114 (2d Cir. 2000)) (other citation omitted); *see also Santana v. Kuhlmann,* 232 F.Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

> [w]hen predicated upon a proper foundation, fingerprint evidence may provide ample proof to uphold a conviction.  The testimony of the Colonie police investigator who found and lifted the prints, the analysis by the Automatic Fingerprint Identification System, the evidence of the technician concluding that defendant was the only possible true match to the print and the confirming testimony of the latent fingerprint examiner provided adequate foundation for the admission of the fingerprint evidence.  The victim testified that she did not know defendant and that he never had permission to be in her home.  This evidence was legally sufficient to support the verdict.

*People v. Jackson*, 808 N.Y.S. 2d 822.

The Appellate Division's decision was not an unreasonable application of established federal law.  Mrs. Tremblay's testimony, corroborated by the police officers, was that the house where she lived was broken into and several valuable items were taken.  Trial Tr. at pp. 55-67.  Thus, the only real question of fact at trial was who had perpetrated the burglary.  Investigator DiGiulio explained how he dusted for fingerprints and was able to lift three prints from Tremblay's cash box, from which valuable items were taken. *Id.* at pp. 83-90.  Fingerprint Examiner Edward Pelton explained the process by which latent fingerprints are matched to those of possible suspects, and further explained how he concluded that one of the lifted fingerprints matched Petitioner's, noting that there were twenty (20) points of identification between the latent fingerprint and Petitioner's ink fingerprint. *Id.* at pp. 109-17.

The fingerprint evidence adduced at trial was not a constitutionally insufficient basis for the jury to conclude that Petitioner was the burglar.  It has been held that in cases where fingerprints found at the scene of the crime constitute the only identifying evidence in a criminal case, "a reasonable juror may find [the defendant] guilty beyond a reasonable doubt as long as the evidence indicates that the imprinted object was generally inaccessible to the defendant except during the commission of the crime." *Torres v. Fischer*, 2004 WL 50871, at *4-7 (S.D.N.Y. Jan. 12, 2004) (citing *Gibson v. Collins*, 947 F.2d 780, 785 (5th Cir. 1991) (internal quotation marks omitted)).

Given Tremblay's testimony that she did not know Petitioner and had not given him permission to enter her house, the aforementioned standard was met in this case. *See, e.g., Steele v. Duncan*, 2004 WL 2334074, at *4-5 (S.D.N.Y. Oct. 14, 2004) (defendant's fingerprint on a wine box found in an area inaccessible to the public was sufficient for the jury to reasonably convict him of murder and burglary). With respect to the larceny conviction, the combination of the fingerprint evidence and the testimony that the goods taken were valued at over one thousand dollars was sufficient for the jury to convict. *See, e.g., Colville v. Scully*, 532 F. Supp. 117, 119 (D.C.N.Y. 1982) (circumstantial evidence consisting of fingerprints was constitutionally sufficient for a jury to convict on the charges of burglary and larceny (citing *United States v. Bowles*, 428 F.2d 592, 597 (2d Cir.) *cert. denied*, 400 U.S. 928 (1970)).

Viewing the evidence in a light most favorable to the prosecution, we find that sufficient evidence existed for the jury to convict Petitioner on both counts. Therefore, it is recommended that the Petition be **denied** on this ground.

### C. Harsh and Excessive Sentence

In his second ground for *habeas* relief, Petitioner argues that his sentence was harsh and excessive in violation of the Eighth Amendment. The record shows that Petitioner was sentenced as a persistent violent felony offender[3] to concurrent prison terms of twenty-five (25) years to life for the burglary conviction and two to four (2-4) years on the grand larceny conviction. Sentencing Hr'g Tr. at p. 16. Petitioner does not argue that the sentences he received were outside the statutory limits for those crimes, but rather, that his sentences should not have been imposed to run consecutively to another prior sentence of twenty (20) years to life he received on a separate

---

[3] Petitioner does not challenge the trial court's classification of him as a persistent violent felony offender.

conviction for burglary entered in August 2001. Pet. at pp. 16-20. However, it was within the trial court's discretion to impose the sentences to run consecutively to his prior sentence. *See* N.Y. PENAL LAW § 70.25(1) ("[W]hen a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and the undischarged term or terms in such manner as the court directs."). In any event, it is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *Mayerhofer v. Bennett*, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007).

Petitioner's claim also fails under Eighth Amendment standards. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White v. Keane*, 969 F.2d at 1383; *Lou v. Mantello*, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001). In *Lockyer*, the Supreme Court held that a sentence of two consecutive prison terms of twenty-five (25) years to life was not grossly disproportionate to the petitioner's conviction on two counts of petty larceny and therefore not unconstitutional. 538 U.S. at 76-77; *see also Staubitz v. Lord*, 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006) (citing *Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft is not unconstitutional) & *Harmelin v. Michigan*, 501 U.S. 957 (life in prison without the possibility of parole for cocaine possession is not unconstitutional)). Petitioner's sentence was

*-11-*

not contrary to nor an unreasonable application of these Supreme Court precedents.  He was convicted in two separate trials on two separate counts of burglary, and was sentenced for both crimes in accordance with the statutory limits imposed by New York State.  Since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, this ground of the Petition should be **denied**.

### D.  Ineffective Assistance of Counsel

Petitioner's final claim is that he was provided ineffective assistance of counsel in violation of the Sixth Amendment.  Petitioner asserts that his attorney "(1) failed to conduct a pre-trial investigation into the facts of the state's sole fingerprint evidence[;] and (2) failed to consult with a[n] independent fingerprint expert."  Pet. at p. 21 (internal citations omitted).

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[4]  In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington*, 466 U.S. at 689.

Addressing the second prong of the *Strickland* test first, Petitioner has failed to show that a

---

[4] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

pre-trial investigation would have created a reasonable probability that the outcome of his trial would have been different.  Although Petitioner states that a pre-trial investigation "may have proven beneficial to [his] defense," such a conclusory allegation does not meet the prejudice prong under *Strickland*.  As the Appellate Division noted on Petitioner's direct appeal, "[n]o viable basis has been shown for precluding the fingerprint evidence."  *People v. Jackson*, 808 N.Y.S. 2d 822. Indeed, the testimony at trial established a valid chain of custody for the fingerprinting evidence in question, and furthermore, such expert testimony is generally admissible under both state and federal evidentiary rules.  *See e.g., People v. Myers*, 632 N.Y.S.2d 111 (N.Y. App. Div. 1st Dep't 1995) ("Expert testimony regarding the identification of fingerprints . . . is a proper subject for consideration by the jury."); *see also* FED. R. EVID. 702; *United States v. Salim*, 189 F. Supp. 2d 93, 100 (S.D.N.Y. 2002) ("It is without question that fingerprint analysis has enjoyed a long history of acceptance as a scientifically sound technique for identification and has routinely been admitted as such for the purposes of criminal trials." (citation omitted)).  Therefore, Petitioner has failed to establish he was prejudiced by counsel's alleged failure to conduct an adequate pre-trial investigation concerning the fingerprint evidence.

The Supreme Court has held that federal district courts need not address both components of the *Strickland* test if a petitioner fails to establish either one.  *Strickland v. Washington*, 466 U.S. at 697.  In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*  Therefore Petitioner's claim based on counsel's failure to conduct a pre-trial investigation should be **denied**.

With respect to Petitioner's claim that his counsel should have called an expert witness to

rebut the testimony of the prosecution's expert, it is the law of this Circuit that "[t]he decision to call an expert witness is a strategic decision for the defense counsel, and generally should not be disturbed." *Mazique v. Ercole*, 2008 WL 2884370, at \*9 (E.D.N.Y. July 23, 2008) (citing *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). The Appellate Division characterized counsel's failure to call an expert witness as a strategic decision, noting that he "attempt[ed] to discredit the fingerprint evidence through cross-examination and produc[ed] as a witness for the defense a neighbor who reported to police a person in the vicinity of the burglary who clearly did not fit defendant's description." *People v. Jackson*, 808 N.Y.S. 2d 822. The record buttresses the Appellate Division's conclusion. On cross-examination of the prosecution's fingerprint expert and again in his closing, counsel highlighted that the fingerprint in question was not a full fingerprint, that two other prints on the cash box were not identified by the expert, and that no thumb prints were discovered on the cash box nor anywhere else in the home, including doorknobs. Trial Tr. at pp. 120-25 & 152-63. Counsel also brought out that a police report from the day of the crime described a suspect with physical characteristics that differed from those of Petitioner, and in addition, proffered the testimony of a neighbor who swore she saw a stocky white man in the driveway of another neighbor's home in the area on the day in question, and that the person she saw bore no resemblance to Petitioner. *Id.* at pp. 129-30, 138-41, & 158-60.

Petitioner has cited to *Schell v. Witek et al.*, 218 F.3d 1017 (9th Cir. 2000), for the proposition that when a fingerprint is the only identifying evidence against a criminal defendant, an attorney who fails to at least consult with a fingerprint expert falls below an objective standard of reasonableness. In *Schell*, the Ninth Circuit remanded a *habeas* petition to the district court for an evidentiary hearing on whether the petitioner received ineffective assistance of counsel due to (1)

an irreconcilable conflict with his attorney and (2) his attorney's alleged failure to consult a fingerprint expert.  218 F. 3d at 1024-30.  The two grounds for ineffective assistance were inextricably linked because the petitioner alleged that the irreconcilable conflict stemmed from his disagreement with counsel over whether to consult a fingerprint expert, and further alleged that despite counsel's indications to the contrary, she never actually consulted with a fingerprint expert and for that reason had refused to show him the expert report she alleged to be unfavorable to his case.  The Ninth Circuit stated that "where the only evidence [against the petitioner] was one fingerprint," counsel's failure to consult with a fingerprint attorney *could* constitute ineffective assistance of counsel.  *Id.* at 1028.  In remanding the petition, the Ninth Circuit passed over the second prong of the *Strickland* test, ordering the district court to conduct an evidentiary hearing to find out "whether [petitioner's] attorney in fact consulted a finger-print expert and whether that expert gave a favorable report."  *Id.* at 1030.  The Ninth Circuit stated that the issue of prejudice was "at the heart of the nature of the alleged conflict between [the petitioner] and his public defender."  *Id.* at 1028.

In this case, there is no intertwined companion claim of ineffective assistance of counsel or any other reason to overlook the prejudice prong of the *Strickland* test.  Nor is there any controlling precedent in this Circuit that would permit this Court to do so.  In *Pavel v. Hollins*, 261 F.3d 210, 225 (2d Cir. 2001), the Second Circuit found ineffective assistance of counsel due to an attorney's failure to call a medical expert to testify about the prosecution's physical evidence in a sexual abuse case that boiled down to a "credibility contest" between the victims and the defendant.  In rendering that decision, the Second Circuit cited comparatively to *Schell* for the proposition that failure to call an expert when a case hinges on a small amount of physical evidence is not professionally

reasonable representation under the objective prong of the *Strickland* test.  261 F.3d at 225. However, the *Pavel* court also went on to discuss the prejudice suffered by the petitioner as a consequence of the unreasonable representation he received, finding that the second prong of the *Strickland* test had also been met.  *See also Bell v. Miller*, 500 F.3d 149, 155-56 (2d Cir. 2007) (finding prejudice and ineffective assistance where counsel failed to consult a medical expert regarding the mental state of a witness whose testimony constituted the only identifying evidence against the petitioner and who had experienced trauma, blood loss, sedation, and possibly amnesia directly after she allegedly saw the petitioner in the act of the crime).

In this case, Petitioner has offered no basis for this Court to conclude that the introduction of expert testimony would have created a reasonable probability that the outcome at trial would have been different.  *See Siehl v. Grace*, 561 F.3d 189 (3rd Cir. 2009) (remanding *habeas* petition for an evidentiary hearing on the claim of ineffective assistance of counsel where defense attorney stipulated that a fingerprint at the crime scene was petitioner's and failed to consult a fingerprint expert, *and* petitioner made a *prima facie* showing of prejudice due to counsel's representation based on evidentiary support in the record).  Unlike in *Pavel, Bell,* and *Siehl*, there is absolutely no foundation on the record to support Petitioner's claim of prejudice, which is essentially an argument that had an expert been consulted, he or she might have been able to cast doubt on the prosecution's fingerprint evidence.  Such a prognostication does not meet the prejudice prong of the *Strickland* standard.  *See United States v. Aquino*, 54 Fed. Appx. 505, 507 (2d. Cir. 2002) (unpublished opinion) (holding that *habeas* petitioner had "not produced any evidence to suggest that if counsel had investigated the government's fingerprint evidence or consulted a fingerprint expert, he would have discovered exculpatory evidence that might have altered the outcome of the trial.  Indeed,

[defendant] has not introduced any evidence of prejudice at all.").

Therefore, it is recommended that the Petition be **denied** on this ground.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be

**DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of

appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A

certificate of appealability may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107,

112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE</u>**

**<u>APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).

Date:   July 17, 2009

*-17-*

Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge